UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JEROLD WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. G-11-313 |
| VS. | § | |
| | § | CONSOLIDATED WITH: |
| TEXAS DEPARTMENT OF CRIMINAL | § | G-11-316; G-11-317; G-11-318; |
| JUSTICE CORRECTIONAL INSTITUTIONS | § | G-11-320; G-11-321; G-11-322; |
| DIVISION, *et al.*, | § | G-11-325; G-11-327; G-11-328; |
| | § | G-11-329; G-11-339; G-11-342; |
| | § | G-11-346; G-11-347; G-11-348 |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER**

**I.   Introduction**

Pending before the Court is the defendants', Texas Department of Criminal Justice – Correctional Institutions Division ("TDCJ") and officers Santos Montez and Angel Davila, motion for summary judgment (Docket Entry No. 20). Of the sixteen consolidated plaintiffs,[1] five filed substantially identical responses (Docket Entry Nos. 37, 40, 42, 43, 49), seven others filed separate but substantially identical responses (Docket Entry Nos. 41, 45, 46, 47, 48, 50, 51), and one plaintiff filed a unique response (Docket Entry No. 44).[2] Also pending are two plaintiffs' nearly indistinguishable motions seeking reconsideration of consolidation or change of lead plaintiff (Docket Entry Nos. 21, 22). After having carefully reviewed the motions, the responses, the record and the applicable law, the Court grants the defendants' motion in part and

---

[1] The lead plaintiff is Jerold Williams, and the other plaintiffs are Alejandro Avila, Joshue Mazique Brown (or "Burton"), Xavier Cooper, Julius Dawson, Jerome Degree, Nicholas D. Graves, Leon Harper, Benjamin D. Martin, Billy Wayne Morgan, Troy D. Rector, Eliazar M. Rincon, James Sadberry, Antonio Shelvin, Benjamin Vallie, and Joseph A. Whitfield.

[2] Only plaintiff Burton asserts an excessive use of force claim against officer Montez.

denies it in part, and the Court denies the plaintiffs' motions for reconsideration or change of lead plaintiff.

## II. Factual Background

This consolidated case essentially pits the religious liberty of prisoners against the safety and security needs of a prison. As best as the Court can discern, on December 10, 2010, the Muslim plaintiffs – all of whom were imprisoned in the TDCJ's Terrell Unit[3] – were participating in a religious Jumah service from 12:30 to 3:00 p.m. in the prison gymnasium when officer Davila allegedly interrupted the service for an unscheduled or "special" head count and strip search.

Before the Jumah service began, officer Davila recorded each Muslim participant's name, housing assignment and identification card, pursuant to standard TDCJ practice. Later, while that service was still ongoing, Davila allegedly entered the gym with two new employees (Song and Garcia), verbally disrupted the service, and instructed the Muslim participants to exit the gymnasium to be counted and strip searched with others of the general population. At that time, plaintiff Burton was standing near the door as the interceder or greeter for the religious service. The lead plaintiff filed suit in state court on May 26, 2011, and the defendants timely removed the lead case to this Court on July 8, 2011.

## III. Contentions of the Parties

### A. The Plaintiffs' Contentions

The plaintiffs' assert violations of the Religious Land Use and Institutionalized Person Act ("RLUIPA"),[4] the Texas Religious Freedom Restoration Act ("TRFRA"),[5] and 42 U.S.C. §

---

[3] Since the filing of this action, plaintiff Rector has been transferred to the Stiles Unit and plaintiff Rincon has been released.

[4] 42 U.S.C. § 2000cc.

2 / 17

1983 via the First, Eighth and Fourteenth Amendments. While acknowledging the prison's important interest in an accurate inmate count, they still allege that the defendants are substantially burdening their religious exercise rights by a means more restrictive than necessary. They also claim that officer Davila intentionally disrupted the Jumah service. They argue that the defendants are not entitled to any form of immunity for their alleged actions. The plaintiffs aver that the defendants misstate the case by focusing on the need for an inmate count rather than officer Davila's interruption of the most important prayer in Islam that, once missed, can never be recovered or substituted.

They contend that the *de minimis* standard is inapplicable to the defendants' use of force. They assert that Warden Roesler's affidavit should be stricken because it is based on events about which he has no direct knowledge. They claim that they were treated differently than the inmates in the craft shop, who were allegedly not counted at the same time as the Jumah participants. They maintain that the Prison Litigation Reform Act ("PLRA")[6] is inapplicable to this case because the defendants removed the case to federal court. They seek a variety of monetary damages, and declaratory and injunctive relief.

### B.     The Defendants' Contentions

The defendants contend that the plaintiffs are barred from seeking damages by RLUIPA, the PLRA, the Eleventh Amendment and the defendants' qualified immunity. They assert that the plaintiffs have not established a violation under RLUIPA,[7] the TRFRA or 42 U.S.C. § 1983.

---

[5] TEX. CIV. PRAC. & REM. CODE § 110.

[6] 42 U.S.C. § 1997e.

[7] Because a significant portion of the defendants' motion would otherwise be contradictory, the Court determines that the defendants' statement of the issues contains a typographical error: it reads "Plaintiffs have shown a violation of RLUIPA or TRFRA," when it should read "Plaintiffs have *not* shown a violation of RLUIPA or TRFRA."

**IV.     Standard of Review**

Federal Rule of Civil Procedure 56 authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to that party's case and on which that party bears the burden at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).  The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323; *see also, Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003).  Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex*, *Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075).  "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'"  *Stults*, 76 F.3d at 656 (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994)).  The nonmovant may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."  *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted).  Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."  *American*

*Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether the nonmovant has established a genuine issue of material fact, a reviewing court must construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc*., 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court may not "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (citing *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

**V.      Analysis and Discussion**

The Court grants the defendants' motion in part and denies it in part, and the Court denies the plaintiffs' motions for reconsideration or change of lead plaintiff. Specifically, the Court denies the defendants' motion regarding RLUIPA, the TRFRA, the First and Fourteenth Amendments, injunctive relief under the Eleventh Amendment and the doctrine of qualified

immunity, and the Court grants their motion regarding any PRLA and Eighth Amendment violations. Essentially, the Court allows the plaintiffs to continue to seek injunctive relief via their surviving claims, but it determines that they cannot continue to pursue monetary damages.

### A. Historical Background

Unfortunately, there is a documented record of religious discrimination against Muslim inmates incarcerated at TDCJ facilities, as evidenced most plainly by the consent decree in *Brown v. Beto*, CV No. H-69-94 (July 20, 1977).[8] That decree states, in relevant part, that TDCJ employees:

(1) [S]hall not discriminate against adherents to the Religion of Islam in the pursuit to their right to profess their religious beliefs and to exercise freely their religious practices; and [TDCJ employees] shall treat adherents to the Religion of Islam equally and on the same basis as, and to permit Islamic religious practices under substantially the same conditions as, are afforded to and enjoyed by adherents to Catholic, Jewish and Protestants faiths incarcerated within the [TDCJ];

(2) [A]llow inmates professing adherence to the Religion of Islam to congregate under appropriate supervision for the purposes of worship, study in the Islamic faith, Sunday School and other religious activities . . . with a leader designated from their midst;

(3) Make available to inmates adhering to the Religion of Islam adequate use of facilities . . . for the purposes of carrying out the religious programs and activities . . . on the same basis as is done for [other] faiths;

(4) Allow adherents to the Religion of Islam . . . equal time for worship services and other religious activities as is enjoyed by adherents to [other faiths]; and

(5) Allow inmates to discuss their religion between themselves and with other inmates without discouragement, prohibition, punishment or other disciplinary action.

---

[8] A copy of the consent decree is attached to this Memorandum Opinion and Order.

The present plaintiffs have brought their suits to enforce many of these same rights. It is in light of this documented history of alleged discrimination against Muslim inmates incarcerated at TDCJ facilities that the Court examines the present plaintiffs' claims.

### B.     RLUIPA

The Court denies the defendants' motion regarding the plaintiffs' RLUIPA claims. RLUIPA provides that "[n]o government shall impose . . . a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that the imposition of the burden . . . **(A)** is in furtherance of a compelling governmental interest; and **(B)** is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc-(a)(1).  Under RLUIPA, "religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Adkins v. Kaspar*, 393 F.3d 559, 567 (5th Cir. 2004).

The plaintiffs cannot seek money damages from the defendants under RLUIPA. *See Harvey Leroy Sossamon, III v. The Lone Star State of Texas, et al.*, 560 F.3d 316, 331 (5th Cir. 2009), aff'd *Sossamon v. Texas*, 131 S. Ct. 1651 (2011).  However, the plaintiffs are not seeking money damages under RLUIPA, but are rather seeking injunctive relief.  Whether they are entitled to such relief depends on whether they satisfy RLUIPA's strictures.  The Court determines that they have done so, and it therefore denies the defendants' motion regarding RLUIPA.

#### 1.     Substantial Burden

The plaintiffs have alleged facts to show that the defendants substantially burdened their right to religious exercise. *See Adkins*, 393 F.3d at 567. "A government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the religious adherent to

significantly modify his religious behavior and significantly violates his religious beliefs." *Adkins*, 393 F.3d at 569-70.[9]  "The practice need not be central to the adherent's belief system, but the adherent must have an honest belief that the practice is important to his free exercise of religion."  *Sossamon*, 560 F.3d at 332.

The Court determines that the interruption of the Jumah service constituted a substantial burden on the plaintiffs' free exercise of their religious beliefs.  As guaranteed by the First Amendment, and as reemphasized in the *Brown v. Beto* consent decree, Muslim inmates at TDCJ are entitled to exercise their religious beliefs.  The Court is not convinced by the defendants' argument that the interruption of the Jumah service is insignificant because it was a "one-time event."[10]  As the plaintiffs have explained, the Jumah service is unique in that, once interrupted or missed, a partial or substituted Jumah service is religiously insufficient.  Thus, the Court finds that the plaintiffs have sufficiently alleged that their freedom of religious exercise was substantially burdened.

### 2. Compelling Governmental Interest

The government has proffered the compelling governmental interest of prison safety and security.  *See Adkins*, 393 F.3d at 567; *see also Sossamon*, 560 F.3d at 332.  To meet this burden, the defendants must provide an explanation for the policy's restrictions on a prisoner's free exercise rights.  *See Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005).  Courts should apply this

---

[9] More particularly, the Fifth Circuit held that:
> the effect of a government action or regulation is significant when it either (1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs . . . a government action or regulation does not rise to the level of a substantial burden on religious exercise if it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed.

*Id.*

[10] However, because the present dispute revolves around a single event, the Court determines that initiating contempt proceedings against the defendants is inappropriate.

standard with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Cutter*, 544 U.S. at 723 (internal quotation omitted). RLUIPA does not elevate religious accommodation over a prison's need to maintain safety and order, and any accommodation must be counterbalanced to not override other significant interests. *Id.* at 722. Thus, the defendants have presented a compelling governmental interest.[11]

### 3. Least Restrictive Means

Lastly, the Court determines that the defendants did not choose the least restrictive means of furthering their compelling governmental interest. *See Adkins*, 393 F.3d at 567. "The phrase 'least restrictive means' has its plain meaning." *Sossamon*, 560 F.3d at 332. The issue is whether a less restrictive means existed for satisfying the government's compelling interest in prison order and safety, while simultaneously honoring the Muslim inmates' right to conduct a complete Jumah service without unnecessary interruption. "[S]hould inmate requests for religious accommodations become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize an institution's effective functioning the facility would be free to resist the imposition." *Cutter*, 544 U.S. at 726.

The Court determines that the defendants have made an insufficient showing that allowing the service to conclude would jeopardize the effective functioning of the prison. First, they offer no reason for their impromptu recount of the Muslim prisoners on the day in question. Second, they already had an accurate count of the Muslim inmates at the Jumah service.

---

[11] Although the plaintiffs contend that other groups of inmates were not subject to the same count and search, such as those changing light bulbs in the gym or those in the craft shop, they have not offered affidavits from any of those other inmates. Therefore, while they have alleged a fact issue, they have offered insufficient evidence that said fact issue is either genuine or material. *See* FED. R. CIV. PROC. 56.

Although the defendants allege that the plaintiffs proffer nothing more than their own informal sign-in sheet as formal proof of the whereabouts of the Jumah participants, the defendants later undermine this assertion in their own brief by quoting from Warden Roesler's affidavit.[12] Warden Roesler's deposition states: "As the offenders entered the gym, [officer Davila] was taking their identification cards and writing down their housing location." Later in the same paragraph, after narrating that the Jumah service was interrupted, Warden Roesler states: "When Officer Davila proceeded to physically count the offenders, Offender Burton approached him and attempted to hand him the Muslim offenders' own version of a count sheet."

What the defendants describe as an inadequate and unofficial count taken by the Muslim prisoners was supplementary to, not in lieu of, the official count taken before they began the Jumah service. Thus, the defendants' argument that an accurate inmate count, under the particular circumstances of this case where they already had an accurate inmate count, does not qualify as the least restrictive means of furthering their compelling governmental interest.

### C. TRFRA

Likewise, the Court denies the defendants' motion regarding the plaintiffs' TRFRA claims. The TRFRA protects religious freedom "in addition to the protections provided under federal law" and the Texas and United States constitutions. TEX. CIV. PRAC. & REM. CODE § 110.009(b). To succeed on a TRFRA claim, the plaintiffs must show that TDCJ's regulations substantially burden their free exercise of religion; if proven, TDCJ may still prevail by showing that its regulations further a compelling governmental interest via the least restrictive means

---

[12] *See* Docket Entry No. 20, p. 19 of 28. The Court disagrees with the plaintiffs' contention that the Court should strike Warden Roesler's affidavit. Even if he was not present when the Jumah service was interrupted, he is a TDCJ supervisor who investigated the incident as part of his official duties. While his determinations are not conclusively factual, they are sufficiently reliable for the Court to consider when ruling on the defendants' motion. *See* FED. R. EVID. 803(6).

possible. *A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.*, 611 F.3d 248, 259 (5th Cir. 2010) (citing *Merced v. Kasson*, 577 F.3d 578, 588 (5th Cir. 2009)).

Under the TRFRA, a burden is substantial if it is "real vs. merely perceived, and significant vs. trivial" – two limitations that "have a broad range of things covered." *Barr v. City of Sinton*, 295 S.W.3d 287, 301 (Tex. 2007). The Court's inquiry is the "degree to which a person's religious conduct is curtailed and the resulting impact on his religious expression . . . [as measured] from the person's perspective, not from the government's." *Barr*, 295 S.W.3d at 301. The Court makes this inquiry on a "case-by-case basis," and is necessarily very "fact-specific." *Merced*, 577 F.3d at 588 (internal citation omitted). "Because TRFRA and its federal cousins--RFRA and RLUIPA--'were all enacted in response to *Smith* and were animated in their common history, language and purpose by the same spirit of religious freedom,' Texas courts 'consider decisions applying the federal statutes germane in applying the Texas statute.'" *Betenbaugh*, 611 F.3d at 259 (quoting *Barr*, 295 S.W.3d at 296). Thus, the Court's analysis of the plaintiffs' RLUIPA claims[13] applies to their TRFRA claims, and the Court denies the defendants' motion on this issue.

D. **PRLA**

The Court grants the defendants' motion regarding monetary damages under the PRLA. The PRLA prevents inmates from seeking compensatory damages for mental and emotional injuries without a showing of physical injury. 42 U.S.C. § 1997e; *see also Mayfield v. Texas Dept. of Criminal Justice*, 529 F.3d 599, 606 (5th Cir. 2008) (internal citation omitted). The plaintiffs suffered no compensable physical injuries. However, the plaintiffs may be entitled to injunctive relief on their claims that survive summary judgment scrutiny, despite the fact that they may not be awarded monetary damages.

---

[13] *See* Section **V(B)**, *supra.*

### E.   Eleventh Amendment Immunity

The Court denies the defendants' motion regarding Eleventh Amendment immunity. The Eleventh Amendment bars suit in federal court "by private parties seeking to impose a liability which must be paid from public funds in the state treasury." *Edelman v. Jordan*, 415 U.S. 661, 663 (1974) (overruled on other grounds). Sovereign immunity, imposed upon federal courts by the Eleventh Amendment, is a jurisdictional issue that must be addressed before any determination of the claims on the merits. *See Alden v. Maine*, 527 U.S. 706, 730 (1999); *United States v. Tex. Tech. Univ.*, 171 F.3d 279, 285-86 (5th Cir. 1999). Congress may abrogate state sovereign immunity only where it "act[s] pursuant to a valid grant of constitutional authority." *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000)).

The plaintiffs are barred by the Eleventh Amendment from seeking damages against the state and individuals acting in their official capacities. *Edelman*, 415 U.S. at 663. However, "[u]nder *Ex Parte Young*, a state official may be sued in his official capacity for injunctive relief without violating the Eleventh Amendment." *Meza v. Livingston*, 607 F.3d 392, 412 (5th Cir. 2010) (citing *Ex Parte Young*, 209 U.S. 123, 159-60 (1908)). Thus, the plaintiffs are entitled to seek injunctive relief against the defendants.

### F.   Qualified Immunity

The Court denies the defendants' motion regarding qualified immunity for claims against them in their individual capacities. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (internal citations omitted). Qualified

immunity is an affirmative defense to federal law claims. *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (internal citation omitted). It is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Swint v. Chambers of County Com'n*, 514 U.S. 35, 42 (1995) (internal quotation omitted). For that reason, whether the qualified immunity defense applies is a threshold legal question to be decided by the Court. *Mitchell v. Forsythe*, 472 U.S. 511, 527-29 (1985).

The Court considers the alleged facts in the light most favorable to the plaintiffs to determine whether the defendants' conduct violated a constitutional right. *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2005) (internal citations omitted). To overcome an assertion of qualified immunity, the plaintiffs must allege facts establishing "that no reasonable officer could have believed probable cause existed" to engage in the alleged conduct in light of the information that the officers possessed and the clearly established law. *Mendenhall v. Riser*, 213 F.3d 226, 231 (5th Cir. 2000). If officers of reasonable competence could disagree as to whether the alleged conduct violated the plaintiffs' rights, immunity remains intact. *See Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The defendants are not entitled to qualified immunity because they have offered no reasonable explanation for why they decided to conduct a "special" count or why they decided to violate the *Brown v. Beto* consent decree. While the Court agrees that prison safety and security are very important, it disagrees with the defendant's contention that this unjustified "special"

count of the Muslim inmates, that interrupted their religious service, was necessary. Accordingly, the Court denies the defendants' motion on this claim.[14]

### G. 42 U.S.C. § 1983

The plaintiffs bring several causes of action under 42 U.S.C. § 1983, contending that some or all of the defendants, in their individual and official capacities, violated the plaintiffs' rights under the First, Eighth and Fourteenth Amendments. Plaintiff Burton asserts an additional claim that officer Montez assaulted him in violation of the Eighth and Fourteenth Amendments.

#### 1. Free Exercise Clause

The Court denies the defendants' motion regarding the plaintiffs' free exercise claims. The Court must weigh prisoners' religious free exercise rights against the reality of incarceration and legitimate penological objectives. *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Courts consider several factors when determining whether a challenged prison regulation withstands free exercise scrutiny: (1) whether a "valid, rational connection exists between the regulation and the legitimate governmental interest" used to justify it; (2) whether prisoners may exercise their constitutional rights via alternative means; (3) the impact of an accommodation on prison staff, inmates and prison resource allocation; and (4) whether any alternative exists that would accommodate prisoners' rights at low costs to valid penological interests. *Turner v. Safley*, 482

---

[14] However, to the extent that any plaintiff may be suing TDCJ and officers Montez and Davila in their official capacities, those claims against the defendant employees of TDCJ are duplicative of the claims asserted directly against TDCJ. A lawsuit against a government official in his official capacity is not a lawsuit against the individual, but rather a suit against the official's office and is no different than a suit against the governmental unit that employs the official. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted); *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999) (internal citations omitted). Supreme Court and Fifth Circuit precedent establish that "[o]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dep. of Social Servs.*, 436 U.S. 658, 690 n.55 (1978); *accord Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000). Therefore, a lawsuit against a government official in his official capacity is a suit against the government itself. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Flores v. Cameron County*, 92 F.3d 258, 261 (5th Cir. 1996); *Bennet v. Pippin*, 74 F.3d 578, 584 (5th Cir. 1996). Accordingly, the Court dismisses any official capacity claims against officers Davila and Montez that are duplicative of the claims against TDCJ. *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985); *Thompson v. Connick*, 578 F.3d 293, 297 n.4 (5th Cir. 2009) (*per curiam*).

U.S. 78, 89-91 (1987) (superseded on other grounds) (internal citations omitted); *see also Baranowski v. Hart*, 486 F.3d 112, 120 (5th Cir. 2007). No single factor is dispositive, nor must all four factors be met. *Scott v. Mississippi Dept. of Corrections*, 961 F.2d 77, 80 (5th Cir. 1992). However, the first factor is the most important, whereas the other factors merely help a court determine whether the connection is logical. *Scott*, 961 F.2d at 81. As explained in the RLUIPA analysis above in Section **V(B)**, the defendants have made an insufficient showing that the recount of the plaintiffs furthered a legitimate governmental interest without unduly burdening the plaintiffs' free exercise rights. Thus, the Court denies the defendants' motion on this issue.

### 2. Eighth Amendment

The Court grants the defendants' motion regarding plaintiff Burton's Eighth Amendment claim against officer Montez. The Eighth Amendment governs an inmate's claim that prison officials used excessive force against him. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (abrogated on other grounds). When a prison official is accused of using excessive force in violation of the Eighth Amendment, a court looks to "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). However, a plaintiff may not recover based on a *de minimis* use of force, unless that force is "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10. If the injury is only *de mimimus*, a plaintiff's excessive force claim fails, absent extraordinary circumstances. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997).

Plaintiff Burton has not shown that he has suffered any physical injury beyond, at most, a *de minimis* injury. Nor has he shown that extraordinary circumstances existed to render his

alleged *de minimis* injury compensable. Thus, the Court grants the defendant's motion regarding this issue.

### 3. Equal Protection

The Court denies the defendants' motion regarding the plaintiffs' equal protection claims. To maintain an equal protection claim, a plaintiff must prove "that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Club Retro LLC v. Cleburne Living Ctr., Inc.*, 568 F.3d 181, 213 (5th Cir. 2009) (internal citations omitted). "Discriminatory purpose . . . implies that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir. 1988) (internal quotation marks and emphasis omitted). The Equal Protection Clause does not, however, require prison staff to treat all inmate groups the same when differentiation is necessary to avoid a threat to prison security. *Jones v. N.C. Prisoners Labor Union, Inc.*, 433 U.S. 119, 136 (1977). Furthermore, courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (internal citations omitted). When considering the reasonableness of a prison regulation, the inmate bears the burden of persuasion. *Overton*, 539 U.S. at 132.

The Court finds that genuine issues of material fact remain disputed concerning the plaintiffs' equal protection claims. The defendants offer no persuasive justification to support their "special" recount of the plaintiffs, which, coupled with a history of religious discrimination

against Muslim inmates in TDCJ facilities, renders summary judgment improper. Thus, the Court denies the defendants' motion on this issue.

## VI.     Conclusion

Based on the foregoing discussion, the Court GRANTS the defendants' motion in part and DENIES it in part, and the Court and DENIES the plaintiffs' motions for reconsideration of consolidation or change of lead plaintiff.

It is so **ORDERED**.

SIGNED at Houston, Texas this 24th day of January, 2012.

_____
Kenneth M. Hoyt
United States District Judge