# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **JEROLD WILLIAMS, ET AL.** | § § | |
| **V.** | § § | **Case No. 3:11-cv-00313**<br>**Consolidated** |
| **TEXAS DEPARTMENT OF CRIMINAL JUSTICE CORRECTIONAL INSTITUTIONS DIVISION, ANGEL DAVILA AND SANTOS MONTEZ** | § § § § § § | |

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 6
II. PROCEDURAL HISTORY ................................................................................................. 6
III. STATEMENT OF FACTS .................................................................................................. 7
IV. SUMMARY OF LEGAL ISSUES ...................................................................................... 8
V. STANDARD OF REVIEW ................................................................................................. 9
VI. ARGUMENTS ................................................................................................................... 10
  A. RLUIPA ........................................................................................................................ 10
  B. TRFRA .......................................................................................................................... 15
  C. FIRST AMENDMENT ................................................................................................. 16
  D. FOURTEENTH AMENDMENT .................................................................................. 17
VII. CONCLUSION .................................................................................................................. 18

HOU:0960000/40350:1759032v2

## **TABLE OF AUTHORITIES**

**CASES**                                                              **PAGE(S)**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 106 S. Ct. 2505 (1986) ............................................................................... 10

*Baranowski v. Hart*,
   486 F.3d 112 (5th Cir. 2007) ............................................................................................ 17

*Barr v. City of Sinton*,
   295 S.W.3d 287 (Tex. 2007) ............................................................................................ 16

*A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.*,
   611 F.3d 248 (5th Cir. 2010) ............................................................................................ 16

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ......................................................................................................... 10

*Club Retro LLC v. Cleburne Living Ctr., Inc.*,
   568 F.3d 181 (5th Cir. 2009) ............................................................................................ 17

*Harvey Leroy Sossamon, III v. The Lone Star State of Texas, et al.*,
   560 F.3d 316 (5th Cir. 2009) ............................................................................................ 13

*Lavernia v. Lynaugh*,
   845 F.2d 493 (5th Cir. 1988) ............................................................................................ 17

*Little v. Liquid Air Corp.*,
   37 F.3d 1069 (5th Cir. 1994) (*en banc*) ........................................................................... 10

*Martinez v. Schlumber, Ltd.*,
   338 F.3d 407 (5th Cir. 2003) ............................................................................................ 10

*Overton v. Bazzetta*,
   539 U.S. 126 (2003) ......................................................................................................... 18

*Pell v. Procunier*,
   417 U.S. 817 (1974) ......................................................................................................... 16

*Scott v. Mississippi Dept. of Corrections*,
   961 F.2d 77 (5th Cir. 1992) .............................................................................................. 17

*Sossamon v. Texas*,
   131 S. Ct. 1651 (2011) ..................................................................................................... 13

*Stults v. Conoco, Inc.*,
   76 F.3d 651 (5th Cir. 1996) .............................................................................................. 10

HOU:0960000/40350:1759032v2

*Turner v. Safley*,
    482 U.S. 78 (1987) ...................................................................................................... 17

## CONSTITUTION AND STATUTES

42 U.S.C. § 2000cc ............................................................................................................ 6, 11

First Amendment ................................................................................................. 10, 11, 16, 17

Eighth Amendment ........................................................................................................... 7, 8

Fourteenth Amendment ...................................................................................... 10, 11, 17, 18

## OTHER AUTHORITIES

Fed. R. Civ. P. 56(c) .......................................................................................................... 6, 10

Tex. Civ. Prac. & Rem. Code § 110.009(b) ...................................................................... 6, 16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **JEROLD WILLIAMS, ET AL.** § § | |
| V. § § | Case No. 3:11-cv-00313 |
| **TEXAS DEPARTMENT OF CRIMINAL JUSTICE CORRECTIONAL INSTITUTIONS DIVISION, ANGEL DAVILA AND SANTOS MONTEZ** § § § § § § | Consolidated |

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

TO THE HONORABLE KENNETH M. HOYT:

In accordance with the Court's Order of September 10, 2014 (Dkt. No. 164), Plaintiffs[1] file this motion for summary judgment under Fed. R. Civ. P. 56(c) with respect to Plaintiffs' claims against the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ") for violation of Plaintiffs' rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA")[2], Texas Religious Freedom Restoration Act ("TRFRA")[3], 42 U.S.C. § 1983, and First and Fourteenth Amendments of the United States Constitution, and would show the following:

---

[1] Plaintiffs are Jerold Williams (lead plaintiff), Alejandro Avila, Joshua Mazique Burton, Xavier Cooper, Julius Dawson, Jerome Degree, Nicholas D. Graves, Leon Harper, Benjamin D. Martin, Billy Wayne Morgan, Troy D. Rector, Eliazar M. Rincon, James Sadberry, Antonio Shelvin, Benjamin Vallie, and Joseph A. Whitfield.
[2] 42 U.S.C. § 2000cc.
[3] Texas Civil Practices and Remedies Code § 110.

5

## I.  INTRODUCTION

This case is about the rights of prisoners to exercise their religion within the prison system free from substantial burden, even if the burden results from a rule of general applicability, unless the burden furthers a compelling state interest and does so by the *least restrictive means*.  Specifically, this case is about prison officials being able to disrupt and otherwise interfere at will with Muslim prisoners' religious services under the guise of conducting a count, recount, or "special count" because there is *no formal written prison policy* governing the intake, counting, and release of prisoners participating in religious services.[4]

## II.  PROCEDURAL HISTORY

In May of 2011, Plaintiffs filed 16 separate lawsuits in the 412th District Court of Brazoria County, Texas, against TDCJ and prison official Angel Davila for violating Plaintiffs' civil rights under the RLUIPA, TFRA, and First and Fourteenth Amendments, seeking damages and injunctive relief.[5]  Plaintiff Burton's suit further named prison official Santos Montez as a defendant for violation of Burton's civil rights under the Eighth Amendment for excessive use of force.[6]

On July 8, 2011, Defendants removed these suits to this Court based on federal question jurisdiction pursuant to 28 U.S.C. §1441(b).  *See* Notice of Removal (Dkt. No. 1).

---

[4] To the extent TDCJ disputes whether the count at issue was a formal count, a recount, or a "special count," Plaintiffs' contentions apply equally to all three types of counts.
[5] Plaintiffs do not address their claims against Officer Davila at this time, but reserve all state and federal rights with respect to those claims.
[6] Plaintiff Burton does not address his claims against Officer Montez at this time, but reserves all state and federal rights with respect to those claims.

On August 10, 2011, the Court consolidated Plaintiffs' separate suits into the present case for purposes of submission of summary judgment motions, any responses to those motions, and for trial (if needed).  *See* Order to Consolidate (Dkt. No. 12).

On September 12, 2011, Defendants moved for summary judgment with respect to the RLUIPA, TRFRA, Prison Litigation Reform Act (PLRA), First, Eighth, Eleventh and Fourteenth Amendments, and claims for monetary damages.  Defendants' Motion for Summary Judgment and Brief in Support ("Defendants' MSJ") at 3 (Dkt. No. 20).

On November 8, 2011, Plaintiffs timely responded to Defendants' MSJ refuting each of Defendants' contentions.  *See* Plaintiffs' Response to Defendants' Motion for Summary Judgment and Brief in Support (Dkt. No. 40).

On January 24, 2012, the Court denied Defendants' MSJ with respect to all but the PLRA and the Eighth Amendment claims, explaining that Plaintiffs may continue to seek injunctive relief, but may not pursue monetary damages.  Memorandum Opinion and Order ("Order") at 5-6 (Dkt. No. 52).

### III. STATEMENT OF FACTS

1. Plaintiffs are practitioners of the Muslim faith.
2. On December 10, 2010, Plaintiffs were participating in the Muslim Jumu'ah religious service from 12:30 to 3:00 p.m. in the North Gymnasium at TDCJ's Terrell Unit in Rosharon, Texas.
3. Jumu'ah is a Friday prayer service that practitioners of the Muslim faith believe is the most holy of all Muslim religious services and cannot be replaced or made up once it has been interrupted and truncated.

4. Before Jumu'ah service began on the day in question, Officer Davila counted the Muslim prisoners by recording each Muslim prisoner's name, housing assignment, and identification card on a count sheet as the prisoners entered the gymnasium, pursuant to standard TDCJ practice.

5. The Muslim prisoners also took their own count of the service participants using an informal sign-in sheet before the Jumu'ah service began, pursuant to their standard practice.

6. Later, while the Jumu'ah service was in progress, Officer Davila entered the gym with two new employees, verbally disrupted the service, and instructed the Muslim prisoners to exit the gymnasium and go out to the North Recreation Yard to be counted and strip searched with other prisoners.

7. Plaintiff Burton was standing near the door to the gymnasium in the role of interceder or greeter for the religious service and attempted to offer Officer Davila the Muslim prisoners' informal sign-in sheet, but Officer Davila refused.

8. TDCJ has no formal written policy controlling the intake, counting, and release of prisoners participating in religious services.

## IV. SUMMARY OF LEGAL ISSUES

A. Whether TDCJ violated RLUIPA by failing to use the least restrictive means to impose a substantial burden on Plaintiffs' exercise of their religion.

B. Whether TDCJ violated TRFRA by failing to use the least restrictive means to impose a substantial burden on Plaintiffs' exercise of their religion.

C.      Whether TDCJ violated the First Amendment by disrupting Plaintiffs' religious service without furthering a legitimate governmental interest in a manner that did not unduly burden Plaintiffs' free exercise rights.

D.      Whether TDCJ violated the Fourteenth Amendment by disrupting Plaintiffs' religious service in a manner that treated Muslim prisoners differently from prisoners of other religious faiths.

## V.  STANDARD OF REVIEW

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The rule permits summary judgment even if the parties disagree as to some facts, and is precluded only when the facts in dispute might affect the outcome of the suit under governing law and the dispute is genuine. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510 (1986). The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). If the movant meets its burden, then the burden shifts to the non-movant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).

# VI. ARGUMENTS

Plaintiffs are entitled to summary judgment and injunctive relief because there is no genuine issue of material fact that TDCJ failed to use the least restrictive means to impose a substantial burden on Plaintiffs' exercise of their religion under RLUIPA and TRFRA, the disruption of Plaintiffs' religious service failed to further a legitimate governmental interest without unduly burdening the Plaintiffs' free exercise rights under the First Amendment, and the disruption of Plaintiffs' religious service treated Muslim prisoners differently from prisoners of other religious faiths under the Fourteenth Amendment.

### A. RLUIPA

RLUIPA, 42 U.S.C. § 2000cc-1(a), provides that:

> "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution. . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person —
> (1) is in furtherance of a compelling governmental interests; and
> (2) is the least restrictive means of furthering that compelling governmental interest."

Whether Plaintiffs are entitled to injunctive relief under RLUIPA depends on whether they satisfy RLUIPA's strictures. Plaintiffs respectfully submit they have done so.

#### 1. Substantial Burden

First, there is no genuine issue of material fact that Officer Davila interrupted Plaintiffs' Jumu'ah service on December 10, 2010, and ordered the Muslim prisoners to exit the

10

gymnasium where the service was being held and go out to the North Recreation Yard for a count. The issue is whether Officer Davila's actions on the above date constituted a substantial burden on Plaintiffs' exercise of their religious beliefs. This Court found that the interruption of Plaintiffs' Jumu'ah service by Officer Davila was indeed a substantial burden on Plaintiffs' exercise of their religious beliefs. Order at 6, citing *Adkins v. Kaspar*, 393 F.3d 559, 569-70 (5th Cir. 2004) ("A government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the religious adherent to significantly modify his religious behavior and significantly violates his religious beliefs.").

TDCJ argued that the disruption of the Jumu'ah service was a one-time event and therefore not a substantial burden. Defendants' MSJ at 4. The Court found this argument unpersuasive at least in part because it failed to appreciate the importance of Jumu'ah service to practitioners of the Muslim faith. Order at 8. Muslims believe Jumu'ah service is the most holy of all Muslim religious services and cannot be replaced or made up once it has been interrupted and truncated. TDCJ's Islamic Chaplain, Hasan Rasheed, confirmed the impact of interrupted Jumu'ah service on Muslims in his responses to Plaintiffs' interrogatories:

> 16)   Is there a potential punishment for one who forsakes or does not complete the Jumu'ah Prayer?
>
> RESPONSE: *...one will not receive the blessing from God for completing Jumu'ah prayer is [sic] **he does not complete the prayer**. However, there is no specific punishment for one who does not complete the Jumu'ah prayer.*

*See* Interrogatories to Hasan Rasheed, Islamic Chaplain TDCJ (attached as Exhibit A) (emphasis added). For a person of any faith, but especially Muslims, there are few burdens more substantial than suddenly being denied an anticipated and expected divine blessing.

Moreover, TDCJ undermines its own argument by failing to take any steps to assure that the disruption of religious service Plaintiffs suffered will not be repeated. TDCJ cannot offer

11

such assurances because it has no formal written prison policy controlling the intake, count, and release of prisoners participating in religious services. Without such policy, there is little to prevent Officer Davila and/or other prison officials from repeating the disruption of Plaintiffs' religious service at will. Officer Davila's responses to Plaintiffs' second set of interrogatories underscore the risk of a repeat disruption:

> 3. Why wasn't unit policy used when it clearly states that religious services are kept separate from recreation?
>
> RESPONSE: …*offenders attending religious services may be mixed or grouped with offenders attending recreation in order to facilitate a recount* and/or to ensure the security of the prison.
>
> 4. If a recount was called why wasn't extra area in the gym used?
>
> RESPONSE: …*Offenders will be lined up if there are a lot of them and they will be counted. Offenders may also be counted with the north rec yard depending on the circumstances*. For example, if a recount is necessary and/or only one officer is present to facilitate the count. A head count in the gym could be sufficient initially, however, if the count does not clear and a recount is necessary, an officer would need to stop the service and line the offenders up for a recount.

*See* Defendant Davila's Responses and Objections to Plaintiffs' Second Set of Interrogatories (attached as Exhibit B) (emphasis added). Officer Davila's interrogatory responses clearly contemplate that the disruption of Plaintiffs' Jumu'ah service will not be an isolated occurrence.

Accordingly, based on the foregoing, Plaintiffs respectfully submit they have satisfied their initial showing that TDCJ has substantially burdened Plaintiffs' right to exercise their religion under RLUIPA.

### 2. Least Restrictive Means

Likewise, there is no genuine issue of material fact that TDCJ did not use the least restrictive means to conduct the count in question. "The phrase 'least restrictive means' has its plain meaning." *Harvey Leroy Sossamon, III v. The Lone Star State of Texas, et al.*, 560 F.3d

12

316, 332 (5th Cir. 2009), aff'd *Sossamon v. Texas*, 131 S. Ct. 1651 (2011). There were plainly plenty of less restrictive means to count the Muslim prisoners without interrupting their religious service and making them exit to the recreation yard. The issue is whether the disruption was necessary to satisfy TDCJ's compelling interest in prison order and safety. This Court found that the disruption was not necessary. Order at 10. Officer Davila had already taken a count of the Muslim prisoners before they entered the gymnasium for their Jumu'ah service:

> 4. Did you collect the identification cards and roster each prisoner who attended the North recreation during this time in the same manner?
>
> RESPONSE: *As I stated above, identification cards are not always taken and retained from those offenders attending the Muslim service. I do not recall if I took and retained the cards on that date or not. I would have asked the offenders their name and housing location and recorded that information **on the count sheet**. I take and retain the identification cards for those offenders on recreation.*

*See* Defendant Davila's Responses and Objections to Plaintiffs' First Set of Interrogatories (attached as Exhibit C) (emphasis added). The Court determined that the count taken by Officer Davila prior to Jumu'ah service could have been used to count the Muslim prisoners once the service had commenced instead of conducting another count. Order at 10.

TDCJ argued that the interruption of Plaintiffs' Jumu'ah service and their subsequent forced exit to the recreation yard was in fact the least restrictive means under RLUIPA. Defendants' MSJ at 4. However, TDCJ's own Security Memorandum on count procedure allows for a less restrictive procedure than the one used by Officer Davila. Specifically, the General Count Procedures in the Security Memorandum call for prisoners merely to cease their movement temporarily while an officer conducts a count:

13

> …
>
> PROCEDURES:
>
> I.   GENERAL COUNT PROCEDURES
>
>    A.   Assigned officers are responsible for the accuracy of counts.
>
>       1.   **Offender movement shall cease momentarily while the officer is conducting a count**.
>
>       2.   Every effort shall be made to conduct count with a minimum of two (2) officers counting their assigned area. When two (2) officers are available to conduct count, use the following procedures:
>
>          a.   One (1) officer shall supervise and observe offenders while the second (2nd) officer performs the count.
>
>          b.   The observing officer shall perform the recount to verify the accuracy of the initial count.
>
>       3.   Officers conducting the count shall remain in the designated area until the count has been verified and cleared, or until the officers have been redirected by supervisory staff.
>
>       4.   Upon completion of an accurate count, the total shall be reported to the supervisor in charge of the count.
>
> …

*See* TDCJ Security Memorandum SM-01.03 (rev. 4) (attached as Exhibit D) (emphasis added). Presumably, TDCJ would not have included these procedures in its Security Memorandum unless it believed the procedures satisfied TDCJ's interest in prison order and safety. Because the disruption of Plaintiffs' Jumu'ah service went well beyond the above procedures, TDCJ *a fortiori* failed to use the least restrictive means under RLUIPA.

What is more, the Security Memorandum makes no distinction between the count procedures for a formal count, a recount, or a special count, differentiating the counts instead by their ***purpose*** and frequency. *Id*. Thus, whether the count in question was a formal count, recount, or special count, it should have been be conducted with just a temporary cessation of

14

movement according to the above General Count Procedures and not the more restrictive procedures Officer Davila employed. As well, because the Security Memorandum apparently does not *preclude* more restrictive procedures, a formal written policy concerning the intake, counting, and release of prisoners participating in religious services is needed in order to prevent a repeat disruption.

Accordingly, based on the above, Plaintiffs respectfully submit they have satisfied their burden to initially show that TDCJ failed to use the least restrictive means to impose a substantial burden on Plaintiffs' right to exercise their religion under RLUIPA.

B. TRFRA

TRFRA protects religious freedom "in addition to the protections provided under federal law" and the Texas and United States Constitutions. Tex. Civ. Prac. & Rem. Code § 110.009(b). To succeed on a TRFRA claim, a plaintiff must show that TDCJ's regulations substantially burden their free exercise of religion; if proven, TDCJ may still prevail by showing that its regulations further a compelling governmental interest via the least restrictive means possible. *A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.*, 611 F.3d 248, 259 (5th Cir. 2010) (citing *Merced v. Kasson*, 577 F.3d 578, 588 (5th Cir. 2009)). Under TRFRA, a burden is substantial if it is "real vs. merely perceived, and significant vs. trivial" – two limitations that "have a broad range of things covered." *Barr v. City of Sinton*, 295 S.W.3d 287, 301 (Tex. 2007). The inquiry is the "degree to which a person's religious conduct is curtailed and the resulting impact on his religious expression … [as measured] from the person's perspective, not from the government's." *Barr*, 295 S.W.3d at 301.

In addition, "[b]ecause TRFRA and its federal cousins—RFRA and RLUIPA—'were all enacted in response to *Smith* and were animated in their common history, language and purpose

15

HOU:0960000/40350:1759032v2

by the same spirit of religious freedom,' Texas courts 'consider decisions applying the federal statutes germane in applying the Texas statute.'" *Betenbaugh*, 611 F.3d at 259 (quoting *Barr*, 295 S.W.3d at 296).  Thus, because of the close relationship between TRFRA and RLUIPA, Plaintiffs' respectfully submit that their initial showing set forth above with respect to RLUIPA applies equally to TRFRA, and therefore Plaintiffs respectfully submit they have satisfied their burden under TRFRA.

### C.  FIRST AMENDMENT

For Plaintiffs' claims under the First Amendment, the Court must weigh Plaintiffs' religious free exercise rights against the reality of incarceration and legitimate penological objectives.  *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  Courts consider several factors when determining whether a challenged prison regulation withstands free exercise scrutiny: (1) whether a "valid, rational connection exists between the regulation and the legitimate governmental interest" used to justify it; (2) whether prisoners may exercise their constitutional rights via alternative means; (3) the impact of an accommodation on prison staff, inmates and prison resource allocation; and (4) whether any alternative exists that would accommodate prisoners' rights at low costs to valid penological interests.  *Turner v. Safley*, 482 U.S. 78, 89-91 (1987) (superseded on other grounds) (internal citations omitted); *see also Baranowski v. Hart*, 486 F.3d 112, 120 (5th Cir. 2007).  No single factor is dispositive, nor must all four factors be met.  *Scott v. Mississippi Dept. of Corrections*, 961 F.2d 77, 80 (5th Cir. 1992).  However, the first factor is the most important, whereas the other factors merely help a court determine whether the connection is logical.  *Scott*, 961 F.2d at 81.

In the present case, as explained in their RLUIPA analysis, Plaintiffs have shown that the count conducted by Officer Davila failed to further a legitimate governmental interest without unduly burdening the Plaintiffs' free exercise rights, in violation of the First Amendment.

Thus, as detailed above, Plaintiffs respectfully submit they have satisfied their initial showing under the First Amendment.

### D. FOURTEENTH AMENDMENT

To maintain an equal protection claim under the Fourteenth Amendment, a plaintiff must prove "that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Club Retro LLC v. Cleburne Living Ctr., Inc.*, 568 F.3d 181, 213 (5th Cir. 2009) (internal citations omitted). "Discriminatory purpose … implies that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir. 1988) (internal quotation marks and emphasis omitted). When considering the reasonableness of a prison regulation, the inmate bears the burden of persuasion. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (internal citations omitted).

In the present case, Plaintiffs have alleged facts in their pleadings to show that the religious services of other faiths are not interrupted and the participants are not taken out of their services to be counted. In addition, attached hereto as Exhibit E is the affidavit of non-party prisoner Rodrigo Montano testifying that the religious services of the Christian faith are not disrupted when a count needs to be taken. Prisoner Montano testified that he attended the Christian service every Sunday morning since his incarceration, a period of over 14 months, and the services have never been interrupted or the participants strip searched for a count. In

17

contrast, TDCJ has offered no persuasive justification to support their "special" recount of the Plaintiffs on the day in question. Order at 16. Therefore, by disrupting Plaintiffs Jumu'ah service for a count and not the religious services of at least the Christian faith, TDCJ has treated Plaintiffs unequally with practitioners of other religious faiths, in violation of the Fourteenth Amendment.

Thus, as set forth above, Plaintiffs respectfully submit they have satisfied their initial showing under the Fourteenth Amendment.

## VII.   CONCLUSION

For at least the foregoing reasons, Plaintiffs respectfully pray that this Honorable Court grant Plaintiffs' Motion for Summary Judgment and order TDCJ to establish a formal written policy controlling the intake, counting, and release of prisoners participating in religious services that both satisfies TDCJ's compelling interest in prison order and safety while simultaneously honoring Muslim prisoners' right to conduct a complete Jumu'ah service without unnecessary interruption.

Respectfully Submitted,

**LOCKE LORD LLP**

By: /s/ Tim Johnson
State Bar No. 10797650
Southern District Bar No. 89
600 Travis St., Suite 2800
Houston, Texas 77002
(713) 226-1114 Telephone
(713) 229-2606 Facsimile
tjohnson@lockelord.com

**ATTORNEY IN CHARGE FOR PLAINTIFFS**

**OF COUNSEL**
Chris Verducci
State Bar No. 24051470
Southern District ID No. 639289
600 Travis Street, Suite 2800
Houston, Texas 77002-3095
(713) 226-1548 (Telephone)
(713) 223-3717 (Facsimile)
cverducci@lockelord.com

Daniel G. Nguyen
State Bar No. 24025560
Southern District ID No. 840977
600 Travis Street, Suite 2800
Houston, Texas 77002-3095
(713) 226-1292 (Telephone)
(713) 223-3717 (Facsimile)
dnguyen@lockelord.com

## NOTICE OF ELECTRONIC FILING

I hereby certify that I have electronically submitted for filing a true and correct copy of the above and forgoing **Plaintiffs' Motion for Summary Judgment and Brief in Support** in accordance with the Electronic Case Filing system of the Southern District of Texas on this 31st day of October, 2014.

/s/ Daniel G. Nguyen
Daniel G. Nguyen

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this instrument via the USDC Southern District of Texas' CM/ECF system per Local Rule CV-5(a)(3) on this the 31st day of October, 2014.

/s/ Daniel G. Nguyen
Daniel G. Nguyen