# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| **JEROLD WILLIAMS, et al.,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:11-CV-313** |
| | § | **(Consolidated with Civil Action Nos.** |
| | § | **3:11cv316, 3:11cv317, 3:11cv318,** |
| | § | **3:11cv320, 3:11cv321, 3:11cv322,** |
| | § | **3:11cv325, 3:11cv327, 3:11cv328,** |
| **TEXAS DEPARTMENT OF CRIMINAL** | § | **3:11cv329, 3:11cv339, 3:11cv342,** |
| **JUSTICE - CORRECTIONAL** | § | **3:11cv346, 3:11cv347, and 3:11cv348)** |
| **INSTITUTIONS DIVISION,** | § | |
| **C.T. TERRELL UNIT;** | § | |
| **ANGEL DAVILA, C.O.V,** | § | |
| **Defendants.** | § | |

## DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT WITH BRIEF IN SUPPORT AND RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

**GREG ABBOTT**
Attorney General of Texas

**KAREN D. MATLOCK**
Assistant Attorney General
Chief, Law Enforcement Defense Division

**DANIEL T. HODGE**
First Assistant Attorney General

**NADINE F. PHILLPOTTS***
Assistant Attorney General

**DAVID C. MATTAX**
Deputy Attorney General for Defense Litigation

P.O. Box 12548, Capitol Station
Austin, Texas 78711
Phone: (512) 463-2080
Fax: (512) 936-2109-9139

**ATTORNEYS FOR DEFENDANTS**

# TABLE OF CONTENTS

Table of Contents ............................................................................................................ ii

Table of Authorities ....................................................................................................... iii

Factual and Procedural Background ............................................................................... 1

Statement of the Issues .................................................................................................... 3

Competent Evidence in Support ...................................................................................... 4

Undisputed Material Facts ............................................................................................... 5

Summary Judgment Standard ........................................................................................... 6

Argument .......................................................................................................................... 6

      A. Section 1983 Claims are not actionable against TDCJ ............................................ 6
      B. Plaintiffs' Parole and Transfer moot their claim for injunctive relief ...................... 7
      C. Plaintiffs' only claim against Defendant Montes has been dismissed ....................... 7
      D. Plaintiffs lack standing to sue Defendants Davila and Montes for injunctive relief ..... 8
      E. Defendants did not violate Plaintiffs' rights under RLUIPA ..................................... 8
            1. Plaintiffs demonstrated no substantial burden ................................................... 9
            2. TDCJ has compelling governmental interests in the challenged practices
            and policies and is using the least restrictive means in furthering those
            interests ........................................................................................................... 12
      F. Defendants did not violate Plaintiffs' rights under TRFRA ...................................... 18
      G. Defendants did not violate Plaintiffs' rights under the First Amendment ................. 19
      H. Defendants did not violated Plaintiffs' rights under the Fourteenth Amendment ....... 20

Response in Opposition to Plaintiffs' Motion for Summary Judgment ........................... 22

Conclusion ...................................................................................................................... 24

Certificate of Service ...................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Adkins v. Kaspar*,
    393 F.3d 559 (5th Cir. 2004) ................................................................. passim

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................ 6

*Aquilar v. Tex. Dep't of Crim. Justice*,
    160 F.3d 1052, 1054 ................................................................................ 6

*Camacho v. Shields*,
    368 Fed.Appx. 834 (9th Cir. 2010) ......................................................... 11

*Canell v. Lightner*,
    143 F.3d 1210 (9th Cir. 1998) .................................................................. 11

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................................. 5

*Crocker v. Durkin*,
    159 F.Supp.2d 1258 (D.Kan., 2001).......................................................... 11

*Cutter v. Wilkinson*,
    544 U.S. 709 (2005) ................................................................................. 13

*Herman v. Holiday*,
    238 F.3d 660 (5th Cir. 2001) ................................................................... 7

*Hicks v. Garner*,
    69 F.3d 22 (5th Cir. 1995) ....................................................................... 19

*Hulsey v. State of Texas*,
    929 F.2d 168 (5th Cir. 1991) ................................................................... 6

*Lovelace v. Lee*,
    472 F.3d 174 (4th Cir. 2006) ................................................................... 13

*Mayfield v. Texas Dept. of Criminal Justice*,
    529 F.3d 599 (5th Cir. 2008) ................................................................... 9

*Mcfaul v. Valenzuela*,
    684 F.3d 564 (5th Cir. 2012) ................................................................... 19

*Nelson v. Univ. of Tex. at Dallas*,
    535 F.3d 318 (5th Cir. 2008) ................................................................... 6

*Okpalobi v. Foster,*
    244 F.3d. 405 (5th Cir. 2001) ........................................................................... 8

*Oliver v. Billy,*
    575 Fed.Appx. 280 (5th Cir. 2014) ................................................................ 7

*Patel v. U.S. Bureau of Prisons,*
    515 F.3d 807 (8th Cir. 2012) ........................................................................... 9

*Ratcliff v. City of Livingston, Tex. et al,*
    406 Fed.Appx. 843(5th Cir 2010) ................................................................. 6

*Sossamon v. The Lone Star State of Texas,*
    560 F.3d 316 (5th Cir. 2009) ...................................................................... 9, 13

*Taylor v. Johnson,*
    257 F.3d 470 (5th Cir. 2001) ........................................................................ 20

*Turner v. Safley,*
    482 U.S. 78 (1987) ....................................................................................... 19

*Will v. Michigan Dept. Of State Police,*
    491 US 58 (1989) ........................................................................................... 6

## Statutes, Rules and Other Authorities

28 U.S.C. § 1441(b) .............................................................................................. 4

42 U.S.C. § 1983 ................................................................................. 4, 8, 22, 23

Fed. R. Civ. P. 56(a) ............................................................................................ 4

Tex. Civ. Prac. & Rem. Code 110.003(a)-(b) .................................................. 18

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| **JEROLD WILLIAMS, et al.,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:11-CV-313** |
| | § | **(Consolidated with Civil Action Nos.** |
| | § | **3:11cv316, 3:11cv317, 3:11cv318,** |
| | § | **3:11cv320, 3:11cv321, 3:11cv322,** |
| | § | **3:11cv325, 3:11cv327, 3:11cv328,** |
| **TEXAS DEPARTMENT OF CRIMINAL** | § | **3:11cv329, 3:11cv339, 3:11cv342,** |
| **JUSTICE - CORRECTIONAL** | § | **3:11cv346, 3:11cv347, and 3:11cv348)** |
| **INSTITUTIONS DIVISION,** | § | |
| **C.T. TERRELL UNIT;** | § | |
| **ANGEL DAVILA, C.O.V,** | § | |
| **Defendants.** | § | |

**DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT WITH BRIEF IN
SUPPORT AND RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT**

Defendants, Texas Department of Criminal Justice Correctional Institutions Division ("TDCJ-CID"), Angel Davila and Santos Montes[1], file this their Cross-Motion for Summary Judgment with Brief in Support under FED. R. CIV. P. 56(a) and Response in Opposition to Plaintiffs' Motion for Summary Judgment. Defendants, respectfully, submit the following:

## I. FACTUAL AND PROCEDURAL BACKGROUND

This is a consolidated case comprising of 16 civil actions, which were timely removed from the 412th District Court of Brazoria County, Texas, to this Court pursuant to 28 U.S.C. § 1441(b). Docket Entry No. ("D.E.") 1. Plaintiffs allege that Defendants TDCJ-CID and Davila violated their rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the Texas Religious Freedom Restoration Act ("TRFRA"), and 42 U.S.C. § 1983 via the First and Fourteenth Amendments. Only Plaintiff Burton alleges that Defendant Montes violated his rights

---

[1] The proper name is Santos Montes and not Santos Montez, which is reflected in the record.

under 42 U.S.C. § 1983 via the Eighth Amendment by using excessive force. *See Burton's Complaint* at 9-10 and 15.  Most of the Plaintiffs opposed the removal action and sought to return their cases to state court, but were denied this remedy. D.E. 11, 13, 14, 15, 16, 19 and 23.  The Court, on Defendants' motion, consolidated the cases only for summary judgment and trial purposes.  D.E. 10 and 12.  Defendants filed a motion for summary judgment to which, Plaintiffs filed responses in opposition.  D.E. 20, 40-51. This Court granted Defendants' motion for summary judgment in part and denied it in part.  D.E. 52.  Specifically, "the Court denies Defendants' motion regarding the RLUIPA, the TRFRA, the First and Fourteenth Amendments, injunctive relief under the Eleventh Amendment and the doctrine of qualified immunity and the Court grants their motion regarding any PRLA *sic* [PLRA] and Eighth Amendment violations." *Id*.  In other words, the Court "allows the plaintiffs to continue to seek injunctive relief via their surviving claims, but it determines that they cannot continue to pursue monetary damages." *Id*.  Within the same order, the Court denied Plaintiffs' motions for reconsideration of the consolidation or change of lead plaintiff. *Id*.

Thereafter, the Court ordered discovery due by 8/31/2012, a pretrial conference set for 9/27/2012 and trial set for 10/15/2012. D.E. 69.  Defendants moved to depose some of the plaintiffs but were denied depositions. D.E. 87 and 90.  For trial preparation, Defendants produced a supplement to disclosures. D.E. 99.  Thereafter, this Court entered an order, following a conferencing, setting discovery due by 12/15/2012, docket call set for 1/22/2013 at 09:30 a.m. in Courtroom 11A. D.E. 108.  In response to the Court's Order, Defendants filed documents under seal. D.E. 112 and 113.  For the upcoming trial, Defendants filed exhibit and witness lists. D.E.132 and 133. Defendants also supplemented disclosures. D.E. 141.  After docket call, the court appointed counsel to represent Plaintiffs. D.E. 146.

Following a telephone scheduling conference held on September 9, 2014, the Court ordered Plaintiff to file a motion for summary judgment concerning the federal claims for relief on or before October 31, 2014 and Defendants must respond on or before November 21, 2014. D.E. 164. Plaintiffs timely filed their motion for summary judgment arguing that "TDCJ failed to use the least restrictive means to impose a substantial burden on Plaintiffs' exercise of their religion under RLUIPA and TRFRA, the disruption of Plaintiffs' religious services failed to further a legitimate governmental interest without unduly burdening the Plaintiffs' free exercise rights under the First Amendment, and the disruption of Plaintiffs' religious service treated Muslim prisoners differently from prisoners of other religious faiths under the Fourteenth Amendment." D.E. 167 at 10.   In response, Defendants argue that they are entitled to judgment as a matter of law and ask this Court to dismiss all claims against them.   Defendants further oppose Plaintiffs' motion for summary judgment and argue that it should be denied.

## II.  STATEMENT OF THE ISSUES

1.      Whether Plaintiffs can sue Defendant TDCJ under Section 1983 via the First and Fourteenth Amendments;

2.      Whether Plaintiffs Williams, Cooper, Degree, Morgan, Rincon, Vallie, Avila, Burton Martin and Harper's claims are moot.

3.      Whether there are viable claims against Defendant Montes.

4.      Whether Plaintiffs have standing to sue Defendants Davila and Montes for injunctive relief.

5.      Whether Defendants violated Plaintiffs' rights under RLUIPA.

6.      Whether Defendants violated Plaintiffs' rights under TRFRA.

7.      Whether Defendants violated Plaintiffs' rights under the First Amendment.

8.      Whether Defendants violated Plaintiffs' rights under the Fourteenth Amendment.

### III.  COMPETENT EVIDENCE IN SUPPORT

Defendants submit the following exhibits in support of their cross-motion for summary judgment and their response in opposition to Plaintiffs' motion for summary judgment:

**Exhibit A**: Security Memorandum subject Count Procedures dated September 28, 2012 SM 1.03(rev. 5) (pages 1-3);

**Exhibit B**:  Terrell Unit Building Scheduling;

**Exhibit C**:  Affidavit of Robert Eason;

**Exhibit D**:  Affidavit of Omar Shakir;

**Exhibit E**:  Inter-Office Communications C.T. Terrell Unit, From Davila to Warden Beard;

**Exhibit F**:  Affidavit regarding Plaintiff Billy Morgan;

**Exhibit G**:  Affidavit regarding Plaintiff Xavier Cooper;

**Exhibit H**:  Affidavit regarding Plaintiff Eliazar Rincon;

**Exhibit I**:  Affidavit regarding Plaintiff Jerold Williams;

**Exhibit J**:  Affidavit regarding Plaintiff Jerome Degree;

**Exhibit K:**  Affidavit regarding Plaintiff Benjamin Vallie;

**Exhibit L**: TDCJ Offender Information Detail for Benjamin Martin[2];

**Exhibit M**:  TDCJ Offender Information Detail for Alejandro Avila[3];

**Exhibit N**:  TDCJ Offender Information Detail for Joshua Burton[4];

---

[2] Available online at TDCJ's Offender Information Search, Offender Benjamin Martin, http://offender.tdcj.state.tx.us/OffenderSearch/index.jsp. (search "TDCJ Number" for "01283842"; then follow "Search" hyperlink).

[3] Available online at TDCJ's Offender Information Search, Offender Alejandro Avila, http://offender.tdcj.state.tx.us/OffenderSearch/index.jsp. (search "TDCJ Number" for "00636918"; then follow "Search" hyperlink).

[4] Available online at TDCJ's Offender Information Search, Offender Joshua Burton, http://offender.tdcj.state.tx.us/OffenderSearch/index.jsp. (search "TDCJ Number" for "00725590"; then follow "Search" hyperlink).

**Exhibit O**:  TDCJ Offender Information Detail for Leon Harper[5];

**Exhibit P**:  TDCJ Chaplaincy Policy Interim 06.05 (rev. 5), "Islamic Religious Services/Practices in the TDCJ," dated June 2009 and

**Exhibit Q**:  Relevant Portions of a Serious Incident Review.

## IV.  UNDISPUTED MATERIAL FACTS

1. At all times relevant to Plaintiffs' allegations, they were inmates incarcerated at the Terrell Unit in Rosharon, Texas, and were followers or practitioners of the Islamic faith.

2. At all times relevant to Plaintiffs' allegations, Defendants Davila and Montes were TDCJ employees working at the Terrell Unit.

3. Defendants Davila and Montes are still employed by TDCJ as correctional officers. Exhibit C at 4.

4. The court dismissed Defendant Montes from this lawsuit in its Memorandum Opinion and Order dated January 24, 2012. *See* DE 52.

5. Plaintiff Troy Rector, who died, was dismissed and terminated from this lawsuit on August 20, 2012. *See* DE 140.

6. Plaintiffs Jerold Williams, Xavier Cooper, Jerome Degree, Billy Morgan, Eliazar Rincon, and Benjamin Vallie have been paroled and are no longer incarcerated in TDCJ. *See* Exhibits F-K and D.E. 134-137.

7. Plaintiffs Alejandro Avila (3:11-CV-316; *See* D.E. 31), Joshua Burton (3:11-CV-317; *See* D.E.45) Benjamin Martin, and Leon Harper have been transferred from the Terrell Unit. Exhibits L-O.

8. Plaintiff Julius Dawson, James Sadberry, Antonio Shelvin, and Joseph Whitfield are incarcerated at the Terrell Unit in Rosharon, Texas.

9. Jumah service was held at the Terrell Unit's gym on December 10, 2010 from 12:30 -3:00 p.m.

---

[5] Available online at TDCJ's Offender Information Search, Offender Leon Harper, http://offender.tdcj.state.tx.us/OffenderSearch/index.jsp. (search "TDCJ Number" for "00640518"; then follow "Search" hyperlink).

## V.  STANDARD OF REVIEW

Summary judgment is proper whenever the movant demonstrates "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 326 (1986).  In short, a properly supported motion for summary judgment should be granted unless the opposing party produces sufficient evidence to show that a genuine factual issue exists. *Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th Cir. 1991) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The rule permits summary judgment even if the parties disagree as to some facts and is precluded only when the facts in dispute might affect the outcome of the suit under governing law and the dispute is genuine. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247-48 (1986).

## VI.  BRIEF IN SUPPORT

### A.  Section 1983 Claims Are Not Actionable Against TDCJ

Plaintiffs' Section 1983 claims via the First and Fourteenth Amendments against Defendant TDCJ should be dismissed because it is not a proper defendant under 42 U.S.C. § 1983. To bring a Section 1983 claim, Plaintiffs must sue a "person" as defined by 42 U.S.C. § 1983. *See* 42 U.S.C. § 1983; *Aquilar v. Tex. Dep't of Crim. Justice,* 160 F.3d 1052, 1054 ("a plaintiff's suit alleging a violation of federal law must be brought against <u>individual persons</u>..."). The United States Court of Appeals for the Fifth Court has consistently held that the state and state agencies or an employee sued in his or her official capacity are not "persons" as the term is used in 42 U.S.C. § 1983. *Ratcliff v. City of Livingston, Tex. et al*, 406 Fed.Appx. 843, 844 (5th Cir 2010); *Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318, 320 (5th Cir. 2008); *Will v. Michigan Dept. Of State Police*, 491 US 58, 71 (1989).  Since TDCJ is a state agency and not a person against whom relief can be sought under Section 1983, this Court should dismiss the First and Fourteenth Amendment claims against it. *Ratcliff,* 406 Fed.Appx. at 844("the claims against the State of

Texas, the TDCJ and the State Bar of Texas be dismissed for lack of subject matter jurisdiction ... because Ratcliff has not stated a cognizable claim against them because they are not 'persons' as that term is used in section 1983").

**B.     Plaintiffs' Parole and Transfer Moot their Claim for Injunctive Relief**

Plaintiffs raise federal claims against the defendants in their official and individual capacities for declaratory and injunctive relief.    During the pendency of this action, Plaintiffs Jerold Williams, Xavier Cooper, Jerome Degree, Billy Morgan, Eliazar Rincon, and Benjamin Vallie were paroled and released from prison. *See* Exhibits F-K and D.E. 134-137.  Also Plaintiffs Alejandro Avila, Joshua Burton, Benjamin Martin and Leon Harper were transferred from the Terrell Unit, where the alleged incident occurred. Exhibits L-O.  Because these plaintiffs are either paroled or transferred from the Terrell Unit and there is no indication that they will return to that unit or face Defendant Davila's alleged application of "his own policy…for count during service,"[6] their claims for injunctive and declaratory relief are moot and should be dismissed.  *Herman v. Holiday*, 238 F.3d 660 (5th Cir. 2001) (holding that an inmate's transfer from an offending institution normally "render[s]…claims for declaratory and injunctive relief moot") and *Oliver v. Billy*, 575 Fed.Appx. 280 (5th Cir. 2014)("the injunctive relief Oliver requested was not only moot due to his transfer to another prison").  Although Plaintiffs' parole and transfer do not render moot their request for damages[7], this Court has already determined that Plaintiffs cannot continue to pursue monetary damages in this case. *See* D.E. 52 at 6 ("the Court…determines that they cannot continue to pursue monetary damages.").

**C.     Plaintiff's Only Claim Against Defendant Montes Has Been Dismissed**

---

[6] Plaintiff Williams' Complaint at 4.
[7] RLUIPA does not allow an action for damages and even it did, sovereign immunity bars such recovery. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 321-29 and 331 n. 51 (5th Cir. 2009); 42 U.S.C. § 2000cc et seq.

Since only Plaintiff Burton sued Defendant Montez and the only claim against him has been dismissed, Defendant Montes requests that a judgment in his favor is entered.  D.E. 52 ("the Court grants [Defendants'] motion regarding…[the] Eighth Amendment").

**D.      Plaintiffs Lack Standing to Sue Defendants Davila and Montes for Injunctive Relief**

To the extent Plaintiffs sue Defendants Davila and Montes for injunctive relief, Defendants argue that Plaintiffs have no standing under Article III of the Constitution to pursue an injunctive relief claim against them because they are without authority to redress the injuries alleged. *Okpalobi v. Foster,* 244 F.3d. 405, 425-427 (5th Cir. 2001) (a state official cannot be enjoined to act in any way that is beyond his authority to act in the first place).  For relief, Plaintiffs seek a TDCJ policy "controlling the intake, counting, and release of prisoners participating in religious services that both satisfies TDCJ's compelling interest in prison order and safety while simultaneously honoring Muslim prisoners' right to conduct a complete Jumu'ah service without unnecessary interruption." See D.E. 1-1 ("Plaintiffs' Complaint") and D.E. 167 at 18.  Defendants Davila and Montes are mere correctional officers and do not have the authority to enact or establish TDCJ policies. Exhibit C at 4.  Because these defendants do not have the "power [] to redress the injuries alleged", Plaintiffs' request for injunctive relief against them should be dismissed. *Okpalobi*, 244 F.3d at 427.

**E.      Defendants Did Not Violate Plaintiffs' Rights under RLUIPA**

To prevail on a RLUIPA claim, 42 U.S.C. § 2000cc(a)(1)-(2), Plaintiffs must demonstrate that the government is imposing a "substantial burden" on the "religious exercise" of an institutionalized person, regardless of whether the burden results from a rule of general applicability.  *Adkins v. Kaspar*, 393 F.3d 559, 567 (5th Cir. 2004).  Even if such a burden exists, the intrusion is excused if the government demonstrates that imposition of the burden: "(A) is in

furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc(a)(1).

### 1. Plaintiffs Demonstrated No Substantial Burden

Plaintiffs bear the burden to demonstrate that the government practice complained of imposes a "substantial burden" on his religious exercise, which requires this Court to answer two questions: (1) is the burdened activity "religious exercise" and, if so, (2) is the burden "substantial"? *Adkins*, 393 F.3d at 567.  A government action or regulation creates a "substantial burden" on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs. *Id.* at 570.

> [T]he effect of a government action or regulation is significant when it either (1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs. A government action or regulation does not rise to the level of a substantial burden on religious exercise if it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed.

*Id.*  "The practice burdened need not be central to the adherent's belief system, but the adherent must have an honest belief that the practice is important to his free exercise of religion." *Sossamon v. The Lone Star State of Texas,* 560 F.3d 316 (5th Cir. 2009), *aff'd, Sossamon v. Texas,* 131 S. Ct. 1651 (2011) (citing *Adkins*, 393 F.3d at 567).  Only if the plaintiff is able to show a substantial burden on his religious exercise does the burden shift to the defendant to demonstrate that the policies are the least restrictive means of furthering a compelling governmental interest. *Mayfield v. Texas Dept. of Criminal Justice*, 529 F.3d 599, 613 (5th Cir. 2008) (citing 42 U.S.C. §2000cc-2(b)); *Patel v. U.S. Bureau of Prisons,* 515 F.3d 807, 813 (8th Cir. 2012).

Plaintiffs fail to establish a prima facie claim that their religious beliefs were substantially burdened by TDCJ. 42 U.S.C. § 2000cc-2(b) (requiring that a plaintiff must produce "prima facie

evidence to support a claim alleging a violation of the Free Exercise Clause or a violation of the [Religious Land Use and Institution]").  They fail to produce any evidence demonstrating that TDCJ's policy or regulation substantially burdened the practice of their religion.  Plaintiffs' only evidence are responses to interrogatories by Chaplain Hasan Rasheed on potential punishment if Jumah prayer is not completed and responses to interrogatories by Defendant Davila on "why wasn't unit policy used when it clearly states that religious services are kept separate from recreation" and "why wasn't extra area in the gym used."  D.E. 167 at 11-12.  Neither of these interrogatories establish Plaintiffs' burden that TDCJ's policy or regulation pressures each of them to significantly modify their religious behavior that is important to the free exercise of his religion and significantly violates their religious beliefs. *Adkins*, 393 F.3d at 570.

In particular, Plaintiffs' allegations do not implicate a TDCJ policy or procedure that imposed a substantial burden on their religious practice.  In fact, Plaintiffs alleged that Defendant Davila "capitalized on the opportunity to deliberately institute his <u>own policy</u> of that customary procedure for count during service, singling out those Muslims at Service for deliberate and unnecessary interference with authorized religious service and practice." D.E. 1-1 (Plaintiffs' Complaint) at 4.  They further alleged that Defendant Davila was "<u>acting outside of the prison custom and usage</u> discrimi[n]ated against the participants of the Muslim Jumu'ah Service by asserting his personal policy over that of the unwritten policy for religious services…." *Id*. at 10-11.  Because these allegations demonstrate that an individual's practice and not a government's practice burdened the free exercise of Plaintiffs' religion, the first part of the RLUIPA analysis fails.

Next, Defendant Davila's alleged interruption of Jumah does not constitute a substantial burden on Plaintiffs' free exercise of their religion.  Plaintiffs' allegations are that Jumah cannot

be replaced or made up and "[f]or a person of any faith…there are a few burdens more substantial than suddenly being denied an anticipated and expected divine blessing." D.E. 167 at 11.  While Defendant Davila was instructed to perform a recount, this activity did not intrude upon the completion of Jumah. Exhibit E at 55. This is evidenced in Plaintiffs' complaint and a statement by Defendant Davila.  In the complaint, Plaintiffs alleged that "at the termination of the Jumu'ah service Defendant Davila,…retaliated by ordering all the Muslims out onto the recreation yard after the count had cleared…." D.E. 1-1 at 4.  In a statement to the warden, Defendant Davila said he waited for Plaintiffs to complete their prayers before he ordered them to go to the recreation yard. Exhibit E at 55.  The evidence conclusively demonstrates that Plaintiffs completed their Jumah prayers despite the complained of interruption.

In addition, a single incident of interference with Plaintiffs' religious practice does not constitute a sufficiently substantial burden.  *Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir. 1998) (holding that "relatively short-term and sporadic" intrusions on an inmate's prayer activities did not constitute a substantial burden on inmate's free exercise of his religion); *Camacho v. Shields*, 368 Fed.Appx. 834, 835 (9th Cir. 2010)(prison officials' interruption of an inmate's prayers on one occasion did not constitute a substantial burden under the free exercise clause); *Crocker v. Durkin*, 159 F.Supp.2d 1258, 1275 (D.Kan., 2001).  In the instant action, Plaintiffs allege a discrete and isolated incident on December 10, 2010, whereby their Jumah prayer was allegedly interrupted by Defendant Davila at 1430 hours (2:30 p.m.).  D.E. 1-1 at 2.  Jumah service was scheduled to end at 1500 hours (or 3:00 p.m.). Exhibit B at 5.  Defendant Davila performed the recount and allowed the Muslim offender to return to the gym.  Exhibit E at 55.  There is no evidence suggesting: 1) that the alleged interrupted lasted beyond the scheduled 3:00 p.m. end time and 2) that the service

could not have continued after the alleged interruption.  Moreover, there is nothing to suggest that the alleged interruption is an ongoing occurrence warranting remedial action.

In addition, TDCJ provided other ways for Plaintiffs to practice their Islamic faith on the date in question, such as group services (such as Jumah, Taleem and Quranic studies) or personal devotion, the wearing of religious medallions, the possession of the Quran, prayer rugs, kufi, beads, and other religious materials. Exhibit O at 1-5.  The fact, that Plaintiffs had other means or opportunities available to practice their religion demonstrates that they were not truly pressured to significantly modify their religious behavior.

Defendants further argue that TDCJ's count policy does not rise to the level of a substantial burden on religious exercise because "it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed." *Adkins*, 393 F.3d at 570.  The policy is neutral on its face and as applied. Exhibit A at 1 ("maintain accountability of offenders committed to the Texas Department of Criminal Justice custody").  The Deputy Director of TDCJ-CID, Robert Eason, who has been a TDCJ employee for over 20 years, relates that "The TDCJ's Security Memorandum SM-01.03 (Rev. 5), entitled 'Count Procedures,' applies to all offenders irrespective of faith preference, and regardless of what offender activities are ongoing.... TDCJ conducts no less than eight formal counts per 24-hour period at all units." Exhibit C at 2.  Even though Plaintiffs' disagree with Defendants, they offer only conclusory allegations to support their position.

**2.   TDCJ has compelling governmental interests in the challenged practices and policies and is using the least restrictive means in furthering those interests.**

To the extent the Court determines Plaintiffs demonstrated their burden, Defendants argue that TDCJ has a compelling government interest in the challenged policy or practice and it is the least restrictive means in furthering the interests.  To meet their burden of proof under this prong,

12

Defendants need only to "take the unremarkable step of providing an explanation for the policy's restrictions that takes into account [its] institutional need to maintain good order, security, and discipline or to control costs." *Smith v. Ozmint,* 578 F.3d 246, 252 (4th Cir. 2009) (quoting *Lovelace v. Lee,* 472 F.3d 174, 190 (4th Cir. 2006)).  Both the Supreme Court and Congress have indicated that courts are to apply that standard with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources *Cutter v. Wilkinson,* 544 U.S. 709, 721 (2005).  "Lawmakers supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions." *Id.*  (RLUIPA will be applied "in an appropriately balanced way, with particular sensitivity to security concerns"). Prison security is a compelling state interest, and deference is due to institutional officials' expertise in this area. *Id.* at 725.   RLUIPA does not elevate the accommodation of religious observances over a prison's need to maintain order and safety, and any accommodation must be measured so that it does not override other significant interests. *Id.* at 722.

Once Defendants point to a compelling state interest, the final part of the RLUIPA analysis is whether the challenged regulation is the least restrictive means of furthering the compelling government interest. 42 U.S.C. § 2000cc-1(a)(2).  "The phrase 'least restrictive means' has its plain meaning." *Sossamon*, 560 F.3d at 332.  But, "[s]hould inmate requests for religious accommodations become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize the effective functioning of an institution, the facility would be free to resist the imposition." *Cutter*, 544 U.S. at 726.

At issue is TDCJ's policy on count and recount, which is found in Security Memorandum 1.03.  This policy applies to all TDCJ offenders. Exhibit A at 1-3 and Exhibit C at 2.  It requires

13

prison officials to physically count all offenders at each prison in an organized manner at a specified time of day or night with a minimum of eight (8) counts to be performed within a twenty-four (24) hour period. *Id*. at 1-2. "The purpose is to establish procedures to maintain accountability of offenders committed to the Texas Department of Criminal Justice (TDCJ) custody." *Id*. at 1. If count does not clear, a recount is called. *Id*. and Exhibit C at 2. A recount "is a secondary physical offender count performed to validate the formal offender count [or as a check and balance tool to validate the formal count]." Exhibit A at 1 and Exhibit C at 2. "Officers who perform the recount are directed to remain in place until the count has been verified and cleared, or until they are redirected by a supervisor. Frequently, recounts occur because of simple human error in a count taken in some part of a unit. Formal counts and recounts take place on a unit-wide basis." Exhibit C at 2.

TDCJ's duty to protect the public's safety and prison's security is indisputably its highest order. *Cutter*, 544 U.S. at 717. To do so, TDCJ's policies or procedures on count and recount are necessary to determine whether an offender has escaped or is out of place by keeping track or accurate accountability of them on a daily basis. To support its policy, Defendants offer testimony from the Deputy Director of TDCJ-CID, Robert Eason, that:

> Maintaining an accurate count of offenders is perhaps the most fundamental and essential part of providing public safety in modern prison operations. Frequent, accurate counts make possible the safe and orderly incarceration of hundreds to thousands of adult felony offenders at each unit while allowing those offenders daily participation in activities such as worship services, meals, job assignments, recreation, clinic visits, visitation, school attendance, and myriad other activities that require their movement about the unit. Counts also ensure that offenders are present at their assigned activities, which contributes to the safety of unit employees and offenders alike. Accordingly, counts are of the utmost importance and take precedence over all other activities on the unit.

Exhibit C at 1-2.

Given that TDCJ's offender population is regularly moving around the prison facility to activities such as worship services, job assignments within and outside the prison gates, clinic visits, and other activities, TDCJ's concerns about escapes and out of place offenders is reasonable or justified. Therefore, Defendants' burden to demonstrate that there is a compelling government interest in safety and security in TDCJ's policy on count and recount has been met.

Plaintiffs claim that Defendants could have achieved substantially the same result with a less restrictive policy. For example, Plaintiffs suggest that "the count[8] taken by Officer Davila prior to Jumu'ah service could have been used to count the Muslim prisoners once the service had commenced instead of counting another count." D.E. 167 at 13. To support their proffered alternative, Plaintiffs rely on a statement in the Court's Order dated January 24, 2012 (D.E. 52 at 10) and a response by Davila to an interrogatory— "Did you collect the identification cards and roster each prisoner who attended the North recreation during this time in the in the same manner? RESPONSE:  As stated above, identification cards are not always taken and retained from those offenders attending the Muslim service. I do not recall if I took and retained the cards on that date or not.  I would have asked the offenders their name and housing location and recorded that information on the count sheet." D.E. 167 at 13.  As an initial matter, the response to the interrogatory does not state that "Davila had already taken count of the Muslim prisoners before they entered the gymnasium for the Jumu'ah service" as purported by Plaintiffs and the court's statement is not evidence. D.E. 167 at 13.  Importantly, Plaintiffs offer no competent evidence to support their alternative and ignores Defendants' concerns of public safety and security.  The alternative does nothing to address TDCJ's concern that the informal count might have missed offenders who had left the gym or unauthorized offenders who had entered the gym or hidden in

---

[8] Defendants dispute this assertion of a count prior to Jumah service.  As the offenders entered the gym, Defendant Davila rostered or noted each offender's name and housing assignment. D.E. 167-4 at 2.

the gym or elsewhere while Defendant Davila, was supervising offenders at the recreation yard,

his other assigned area. Exhibit C at 3-4.  As the Deputy Director of TDCJ-CID Mr. Eason

explained that:

> If an officer relies upon an earlier written informal count (known as a "paper count") for a formal count or recount, the officer might be missing a variety of incidents that may destroy count accuracy.  An offender might leave the area; an offender might have entered the area; or an offender who was present for the informal count might be hiding within the same area.  In any of these circumstances, a physical count provides immediate and accurate individual offender identification that a paper count cannot.

> I have attempted to illustrate why frequent physical counts and recounts are indispensable to modern prison security, especially in an environment that allows offenders to move about the TDCJ's prison units in order to attend activities or seek assistance vital to their health, welfare, safety, and rehabilitation.  Although the plaintiffs claim these purposes could be accomplished by paper counts and offender-conducted counts, I have attempted to explain the fault with these measures. Although the plaintiffs claim these purposes could be accomplished by paper counts and offender-conducted counts, I have attempted to explain the fault with these measures.  They fail because they ignore the simple fact that many offenders seek to *evade* detection and security monitoring for reasons of their own.  Further, the suggested remedies originate from those who do not share in the responsibility that TDCJ employees bear for the safety of the public, the offenders in their charge, and each other.

Exhibit C at 2 and 4.

TDCJ has previously considered Plaintiffs' alternative but concluded that it compromises

security.  For example, in a Serious Incident Review, the Director of Region VI, Gilbert

Campuzano reported the escape of two offenders at the Briscoe Unit on April 6, 2010.  Exhibit Q

at 1-3. Mr. Campuzano said: "[a]t approximately 6:19 a.m., the Briscoe Unit initiated a head count.

Instead of conducting a head count, Officer Galindo turned in the roster he used when the Furniture

Factory offenders were turned out [or rostered] from the main building [to the Furniture Factory]

[showing that offender Bustos-Diaz and offender Octavio Ramos Lopez had turned out to work]

as the official count." *Id*. at 1.  The count cleared; however, "[a]t approximately 8:16 a.m., after

all offenders were rostered from the Furniture Factory back to the main building it was determined that both Offender Bustos-Diaz and Offender Octavio Ramos Lopez…were unaccounted for." *Id.* at 2.  Both offenders had escaped and "remain[ed] at large" as of the date of the report. *Id.*  Because a roster sheet was submitted in lieu of conducting a count, the unit did not become aware of the unaccounted offenders for approximately two hours after count, which resulted in the offenders not being apprehended for several days.  To prevent this occurrence, TDCJ requires its staff to perform formal counts and recounts at the scheduled times and not to accept informal counts or roster sheets.

Mr. Eason also points out that count cannot be delayed because:

> Delaying formal counts or recounts would disrupt the unit's building schedule, offender activities, and facility operations.  Most notably, delaying counts would disrupt the count schedule, since the unit must have adequate time to deal with recounts when the need arises.  Additionally, if an offender attempts an escape, delaying count or recount delays discovery of the attempt, the offender's identity, and his whereabouts and apprehension.  Subject to the status of the unit's building schedule and operational circumstances, the senior warden has the discretion to allow some additional time for the conclusion of offender worship when a formal count or recount works a significant curtailment on a worship service.  An officer would not have that discretion, but could pass along an offender request for additional time to a supervisor.

Exhibit C at 3.

According to Mr. Eason, Defendant Davila did not have the discretion of conducting the recount. *Id.*  It was ordered by a supervisor. *Id.*  He further states that "Davila's decision to combine the plaintiffs with other offenders on the recreation yard was understandable, considering the Terrell Unit protocol combining the gym and recreation yard formal and recounts." *Id.* at 4.

Giving the appropriate amount of deference to TDCJ's own expertise in prison administration, Defendants have demonstrated that its count and recount policy is the least restrictive means of advancing it compelling interests in public safety and security.

17

**F.      Defendants Did Not Violate Plaintiffs' Rights under TRFRA**

Plaintiffs' Texas Religious Freedom Restoration Act ("TRFRA") claim is not actionable against Defendants Davila and Montes in their individual capacities because the Act permits only a claim against Defendants in their official capacities." Tex. Civ. Prac. & Rem. Code § 110.005(d). Accordingly, the claim against Defendants in his individual capacity should be dismissed from this action as a matter of law.

The state counterpart to RLUIPA is TRFRA.  *Adkins v. Kaspar*, 393 F.3d 559, 567 n. 32 (5th Cir. 2004).  "The language of RLUIPA regarding the burdens of proof required to demonstrate a violation is substantially similar to that language in TRFRA, and we thus refer to federal case law construing the RLUIPA burdens of proof for our analysis of TRFRA burdens of proof." *Balawajder v. Texas Dept. of Criminal Justice Institutional Div.*, 217 S.W.3d 20, 26 (Tex.App.-Houston [1st Dist.] 2006); *see also* Tex. Civ. Prac. & Rem. Code 110.003(a)-(b)).  "Under RLUIPA, and hence TRFRA, the plaintiff bears the initial burden of showing that the government is substantially burdening his free exercise of religion." *Id.*  "Once a plaintiff shows that his free exercise of religion has been substantially burdened, however, the Texas and federal acts differ regarding which party next has the burden of proof.  In Texas, a rule 'that applies to a person in the custody of a jail or other correctional facility …is presumed to be in furtherance of a compelling government interest and the least restrictive means of furthering that interest,' but the presumption is rebuttable.  Under TRFRA, therefore, a complaining party must rebut the presumption that any prison regulation that substantially burdens a prisoner's free exercise of religion is in furtherance of a compelling governmental interest and the least restrictive means of furthering that interest." *Id.*

As the complaining party, Plaintiffs fail to meet their burden of proof on both parts of the TRFRA analysis.   As discussed above under the substantial burden subheading, Plaintiffs' allegations do not amount to a substantial burden on their religious practice and are unsupported by evidence.   In addition, Plaintiffs have not even attempted to rebut the presumption that TDCJ's policy on count and recount is in furtherance of a compelling government interest and the least restrictive means of furthering that interest.   Instead, they depend on their analysis under RLUIPA, and completely ignore the fact that TDCJ's policy is presumed to be in furtherance of a compelling government interest and the least restrictive means of furthering that interest under TRFRA. Plaintiffs have provided not even a scintilla of evidence to rebut this presumption.   Consequently, Defendants request that this Court dismisses the TRFRA claim.

## G.   Defendants Did Not Violate Plaintiffs' Rights under the First Amendment

While "[i]nmates retain their First Amendment right to exercise their religion," "this right is subject to reasonable restrictions and limitations necessitated by penological goals." *Mcfaul v. Valenzuela*, 684 F.3d 564, 571-72 (5th Cir. 2012) (quoting *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995)).   In analyzing a disputed prison policy, the court must consider: 1) whether there is a rational connection between the policy and a governmental interest; 2) whether there are alternative means of exercising the inmate's alleged right if the policy is upheld; 3) whether accommodating that alleged right would have an undue impact on guards, other inmates or prison resources; and 4) whether there is an alternative to the policy that accommodates the alleged right with a minimum cost to valid penological interests.   *Turner v. Safley,* 482 U.S. 78, 89 (1987).   A court must be mindful to give due deference to the decisions of prison officials who are tasked with making difficult judgments concerning institutional operations.   *Id.*

It is not necessary to do the above First Amendment analysis because Plaintiffs cannot pursue this claim against any of the defendants. As discussed above, Plaintiffs cannot sue TDCJ, a state agency, for a First Amendment violation because it is not a "person" as the term is defined in 42 U.S.C. § 1983. To the extent Plaintiffs attempt to pursue this claim against the individual defendants, they will fail because as previously discussed, Plaintiffs lack standing to sue Defendants Davila and Montes for injunctive relief under the First Amendment. Because Plaintiffs have not sued a proper person for injunctive relief under the First Amendment, they cannot pursue the claim. Accordingly, Defendants ask this Court to dismiss Plaintiffs' First Amendment claim.

Even if Plaintiffs sued a proper person, Defendants have demonstrated that TDCJ has a compelling government interest in their policy on count and recount and they are using the least restrictive means of accomplishing this interest under RLUIPA. Because RLUIPA imposes a higher burden than the First Amendment, Defendants should prevail on the First Amendment claim.

## H.    Defendants Did Not Violate Plaintiffs' Rights under the Fourteenth Amendment

To establish a Fourteenth Amendment Equal Protection Clause violation, Plaintiffs "must allege and prove that he received treatment different from that received by similarly situated individuals and the unequal treatment stemmed from a discriminatory intent." *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001). "The Equal Protection Clause does not require 'that every religious sect or group within a prison—however few in numbers—must have identical facilities or personnel'; it requires only that prison officials afford inmates 'reasonable opportunities … to exercise the religious freedom guaranteed by the First and Fourteenth Amendment[s]." *McFaul v. Valenzuela*, 684 F.3d 5664 (5th Cir. 2012)(quoting *Baranowski v. Hart*, 486 F.3d 112, 123 (5th Cir. 2007)). The absence of an element extinguishes Plaintiffs' equal protection claim.

It is not necessary to do the above Fourteenth Amendment analysis because Plaintiffs cannot pursue this claim against any of the defendants.  As discussed above, Plaintiffs cannot sue TDCJ, a state agency, for a Fourteenth Amendment violation because it is not a "person" as the term is defined in 42 U.S.C. § 1983.  To the extent Plaintiffs attempt to pursue this claim against the individual defendants, they will fail because as previously discussed, Plaintiffs lack standing to sue Defendants Davila and Montes for injunctive relief under the Fourteenth Amendment.  Because Plaintiffs have not sued a proper person for injunctive relief under the Fourteenth Amendment, he cannot pursue his claim.  Accordingly, Defendants ask this Court to dismiss Plaintiffs' Fourteenth Amendment claim.

Even if Plaintiffs sued a proper person, Plaintiffs have not shown that Defendants violated their rights under the Equal Protection Clause.  Plaintiffs claim that religious services for other nonMuslim faith groups are not interrupted or disrupted for count. D.E. 167 at 17.  They point to the affidavit of offender Rodrigo Montano to back up or support their claim.  Mr. Montano's affidavit reflected, however, that Defendant Davila stopped a "Christian Worship Service" on July 24, 2011, to conduct count. D.E. 167-6 at 2("I …was in attendant at the Christian Worship Service for Sunday morning, July 24, 2011 at approximately 0830-1045, On this particular [S]unday Chaplain Phillip Crocco stopped the volunteer speaker and stated with Officer A. Davila that there was a new system wide TDCJ policy that all service are to be interrupted for count.").  Plaintiffs' own evidence undercuts their argument.  Because Plaintiffs' only evidence of discriminatory treatment does not show that offenders belonging to the Christian denomination were not subject to an interruption for count during their service as alleged, they have not established that the requisite differential treatment and that the treatment resulted from discriminatory intent, which is

required to bring an actionable equal protection claim.  Therefore, their Fourteenth Amendment claim should be dismissed.

As demonstrated above, Defendants are entitled to summary judgment as a matter of law because 1) Plaintiffs Williams, Cooper, Degree, Morgan, Rincon, Vallie, Avila, Burton Martin and Harper's claims are moot; 2) the remaining Plaintiffs cannot bring First and Fourteenth Amendment claims against TDCJ under Section 1983; 3) the remaining Plaintiffs lack standing to sue the individual defendants for injunctive relief; 4) Defendant Montes has been previously dismissed from this lawsuit; and 5) as indicated by Defendants' summary judgment evidence, Defendants did not violate Plaintiffs' rights under RLUIPA, TRFRA, the First Amendment and the Fourteenth Amendment.  Accordingly, Defendants request that this Court grants summary judgment in their favor.

## VII.  RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Defendants argue that the Court should not grant Plaintiffs' motion for summary judgment because there are genuine issues of material fact or genuine disputed material facts.  Under Plaintiffs' version of the facts, Defendant Davila verbally interrupted their Jumah prayer, ordered them to recreation to perform "his own policy of that customary procedure for count" as a form of retaliation and discrimination for being questioned by an offender, and his actions resulted in them being "denied an anticipated and expected divine blessing." D.E. 1-1 at 1-12 and D.E. 167 at 11. However, Defendants have submitted evidence demonstrating how disputed material facts control the resolution of the claims.  Under Defendants' version of the facts, Defendant Davila was ordered by a supervisor to recount the offenders in gym and recreation yard, he waited until Plaintiffs finished praying, he ordered them to the recreation yard for recount, he refused to accept an offender's own written count in compliance with policy, and he combined the plaintiffs with other

offenders on the recreation yard pursuant to Terrell Unit's protocol to allow him to count both groups at once by housing assignment. Exhibit C at 3-4 and Exhibit E at 55.   These competing versions of events cannot be reconciled at summary judgment and warrant resolution by a trier of fact.

Defendants have also established a factual dispute regarding whether the prison's actions interfered with Plaintiff's religious practice. *See* Exhibit E at 55.  Plaintiffs, in contrast, have provided mixed evidence regarding whether they completed their Jumah prayer prior to Defendant Davila's alleged interruption. D.E. 1-1 at 4 ("at the termination of the Jumu'ah service Defendant Davila,…retaliated by ordering all the Muslims out onto the recreation yard after the count had cleared….").   Furthermore, by Imam Omar Shakir attesting that the Islamic faith tolerates interruptions in Jumah prayer and such interruptions do not devalue or diminish blessings, Defendants have provided evidence rebutting Plaintiffs' claim of being "denied an anticipated and expected divine blessing."  Exhibit D at 1-2 ("[the Prophet Muhammad] would interrupt his Jumah message to give someone a specific instruction and then resume. It is also documented that he would at times leave the Jumah to speak with someone and then return and continue without any evidence that something was wrong or deficient in the Jumah….Islam does not devalue or diminish the blessings derived for circumstances beyond the attendee's control").   Even Mr. Eason's and Imam Shakir's affidavits rebut Plaintiffs' assertion of discriminatory treatment by demonstrating that TDCJ's policy on count and recount is applied to offenders belonging to other nonMuslim faith groups and has resulted in interruptions in nonMuslim services.  Exhibit C at 2 and Exhibit D at 1.   In light of these material factual disputes, Defendants request that this Court denies Plaintiffs' Motion for Summary Judgment.

## VIII.    CONCLUSION

Defendants request that this Court grants their motion for summary judgment and denies

Plaintiffs' motion for summary judgment.

Respectfully submitted,

**GREG ABBOTT**
Attorney General of Texas

**DANIEL T. HODGE**
First Assistant Attorney General

**DAVID C. MATTAX**
Director of Defense Litigation

**KAREN D. MATLOCK**
Assistant Attorney General
Chief, Law Enforcement Defense Division

/s/ Nadine Phillpotts
NADINE PHILLPOTTS
Assistant Attorney General
Attorney in Charge
State Bar No. 24058045
Admission No. 939905

P. O. Box 12548, Capitol Station
Austin, Texas 78711
Phone: 512.463.2080
Fax: 512.495.9139

**ATTORNEYS FOR DEFENDANTS**

**NOTICE OF ELECTRONIC FILING**

I, NADINE PHILLPOTTS, Assistant Attorney General of Texas, do hereby certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing in accordance with the Electronic Case Files system of the Southern District of Texas, on this the 21st day of November 2014.

/s/ Nadine Phillpotts
NADINE PHILLPOTTS
Assistant Attorney General

**CERTIFICATE OF SERVICE**

I, NADINE PHILLPOTTS, Assistant Attorney General of Texas, do hereby certify that true and correct of the above and foregoing **Defendants' Cross-Motion for Summary Judgment with Brief in Support and Response in Opposition to Plaintiffs' Motion for Summary Judgment** has been served by e-notice and by placing same in the United States mail, on this the 21st day of November 2014, addressed to:

Tim Johnson
Chris Verducci
Daniel G. Nguyen
Locke Lord LLP
600 Travis St., Suite 2800
Houston, Texas 77002
*Counsel for Plaintiffs*

/s/ Nadine Phillpotts
NADINE PHILLPOTTS
Assistant Attorney General